C SDNY
CUMENT
ECTRONICALLY FILED

FILED: 7/10/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEE RUFFIN,

                Plaintiff,

-against-

DONNA TRAVERS-MARSH, "JANE DOE" FURMAN,
TAMMI CHABOTY, LYNN LILLEY, IN THEIR
OFFICIAL CAPACITIES AND INDIVIDUALLY,
                Defendants.

17-CV-02564 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Lee Ruffin, proceeding *pro se*, commenced this action pursuant to 42 U.S.C. § 1983 against Sergeant Furman ("Furman"), Lieutenant Tammi Chaboty ("Chaboty"), Education Supervisor Donna Travers-Marsh ("Marsh"), and the Superintendent of Woodbourne Correctional Facility Lynn Lilley ("Lilley") (collectively, "Defendants"), in their individual and official capacities, sounding in violations of Plaintiff's First, Eighth and Fourteenth Amendment rights. (*See generally* Complaint ("Compl."), ECF No. 2.)

    Presently before the Court is Defendants' unopposed motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). (ECF No. 17.)[1] For the following reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff is granted leave to amend his Complaint in conformity with this Opinion.

## I. Background[2]

    Plaintiff Lee Ruffin ("Plaintiff") was incarcerated at Woodbourne Correctional Facility ("Woodbourne") from January 12, 2015 to August 18, 2016. (Compl. ¶ 3.) While at Woodbourne, Plaintiff participated in the Bard Prison Initiative ("BPI") college degree program and worked in

---

[1] The Court deemed Defendants' motion unopposed and fully submitted on May 3, 2018. (ECF No. 19.)
[2] The following facts are taken from the Complaint and are assumed to be true for the purposes of this motion.

1

the prison's employment program as a Mobility Guide responsible for assisting visually impaired inmates. (*See* Mem. of Law in Supp. of Def. Mot. to Dismiss ("Def. Mot.") 4, 6, 7; Compl. ¶ 7.)

While studying in the BPI computer lab on June 8, 2016, Defendant Furman summoned Plaintiff to the Sergeant's office. (Compl. ¶ 7.) Upon entering the office, Furman accused Plaintiff of theft and threatening a visually impaired inmate. (*Id.*) Plaintiff attempted to refute the accusations but Furman "berated plaintiff, calling him 'a thieving piece of trash' and 'a fucking liar.'" (*Id.*) Defendant Furman then placed Plaintiff on cell confinement for seventy-two hours while the allegations were investigated. (*Id.* ¶ 8.) Following the investigation, Furman prepared a misbehavior report concerning the alleged incident with the visually impaired inmate. (*Id.*) Defendant Furman's report, dated June 9, 2016, and served on Plaintiff on June 10, 2016, relied on statements from the alleged victim as well as confidential informants, and charged Plaintiff with two violations: making threats, in violation of Rule 102.10, and possessing stolen property, in violation of Rule 116.13. (*Id.* ¶¶ 8, 19.)

On June 9, 2016 Defendant Chaboty was assigned as the review officer for Plaintiff's misbehavior report. (*Id.* ¶ 9.) As the review officer, Chaboty determined the proper disciplinary tier for the alleged misbehavior, and classified the incident as a tier III infraction requiring adjudication at a Superintendent's Hearing. (*Id.*)

Defendant Donna Travers-Marsh ("Marsh"), the Education Supervisor at Woodbourne, presided over Plaintiff's disciplinary hearing on June 14, 2016. At the hearing, Plaintiff lodged objections to Defendant Marsh's role because Marsh created a misbehavior report against Plaintiff in an unrelated matter on March 8, 2016. (*Id.* ¶¶ 10, 22.) Marsh allegedly ignored Plaintiff's objections and concerns about impartiality and proceeded with the hearing. (*Id.*) During the proceedings, Plaintiff raised objections as to the vagueness of the allegations and the lack of

2

adequate notice in the misbehavior report. (*Id.* ¶ 11.) Marsh acknowledged the objections, and "arbitrarily denied" them (*Id.*) Plaintiff also requested that five staff witnesses be called in support of his defense, but Marsh denied four out of the five, noting that the four potential witnesses were corrections officers who had no "direct knowledge of the particular incident." (*Id.* ¶ 12.) The only witness who testified on Plaintiff's behalf was Ms. S. Dloughy ("Dloughy"), the Coordinator of the employment program in which Plaintiff was a participant. (*Id.*) Dloughy stated that, contrary to the misbehavior report, the alleged victim did not inform her of the misbehavior that the victim communicated to Furman. Had Dloughy been notified, "she would have fired [Plaintiff] and authored a misbehavior report against him." (*Id.* ¶ 13.)

Marsh then adjourned the hearing and interviewed Defendant Furman outside of Plaintiff's presence regarding the statements Furman relied upon to compose the misbehavior report. (*Id.* ¶ 15.) When the hearing resumed, Plaintiff requested "specificity as to dates, times and locations and identification of items alleged to have been stolen," but Marsh denied the request stating that providing the requested information "would jeopardize the safety and security of the facility." (*Id.* ¶ 16.) Plaintiff also raised concerns regarding the credibility of the alleged victim and requested that Marsh review the alleged victim's institutional record. (*Id.* ¶ 18.) Marsh refused, maintaining that the information sought by Plaintiff was "inconsequential to the incident in question." (*Id.*) The disciplinary hearing lasted approximately two hours and ended with Marsh finding Plaintiff guilty of both rule violations listed in the misbehavior report. (*Id.* ¶ 19.) Marsh sentenced Plaintiff to 75-days cell confinement, 75-days loss of all privileges, and ordered Plaintiff's removal from the employment and college degree programs. (*Id.*) Plaintiff remained in cell confinement until his transfer from Woodbourne to Riverview Correctional Facility ("Riverview") on August 18, 2016. (*Id.* ¶ 24.) Prior to arriving at Riverview, Plaintiff underwent "three uncomfortable strip frisks and

body cavity searches," as part of the transfer process. (*Id.*) Once at Riverview, Plaintiff remained on cell confinement until August 22, 2016. (*Id.*)

## II. Legal Standard on Motion to Dismiss

To defeat a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual content pleaded permits a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. In considering a 12(b)(6) motion, the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 *(*quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Where a Plaintiff proceeds *pro se*, the Court must construe the complaint "broadly, and interpret [it] "to raise the strongest arguments that [it] suggest[s]." *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). Notwithstanding the relaxed pleading standard afforded to *pro se* litigants, a *pro se* party must still comply with the relevant rules of procedural and substantive law. *Askew v. Lindsey*, No. 15-cv-7496 (KMK), 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016).

### III. Discussion

"To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam)). Construing the Complaint liberally, Plaintiff alleges violations of the Free Exercise Clause of the First Amendment, the Eighth Amendment Cruel and Unusual Punishment Clause, and the Due Process Clause of the Fourteenth Amendment.[3]

Defendants contend that the Complaint should be dismissed because (1) Plaintiff does not plead sufficient facts to state a claim on which relief can be granted; (2) Defendants are entitled to immunity under the Eleventh Amendment; and (3) Defendants are entitled to qualified immunity. The Court takes these arguments in turn.

#### A. First Amendment Free Exercise Claim

"The Free Exercise Clause of the First Amendment is an 'unflinching pledge to allow our citizenry to explore . . . religious beliefs in accordance with the dictates of their conscience.'" *Corbett v. Annucci*, No. 16-cv-4492, 2018 WL 919832, at *3 (S.D.N.Y. Feb. 13, 2018) (quoting *Jackson v. Mann*, 196 F.3d 316, 320 (2d Cir. 1999)). Although incarcerated, prisoners retain some measure of the constitutional protection under the First Amendment's Free Exercise Clause. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). The Second Circuit, however, has recognized that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and

---

[3] The Complaint also lists the Fifth Amendment as one of the "legal bas[es] for [the] claim[s]." (Compl. ¶ 1.) However, Plaintiff's due process claim arises under the Fourteenth Amendment as it involves a state prisoner alleging federal constitutional violations against correction officers in their individual and official capacities. *See* U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of a [cognizable interest] without due process of law") (internal quotation marks omitted).

rights, a retraction justified by the considerations underlying our penal system." *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) (internal quotation marks and citations omitted). Therefore, an inmate's First Amendment rights must align with "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford*, 352 F.3d at 588.

To state a First Amendment claim, a plaintiff must demonstrate that he or she has a sincerely held religious belief, which was substantially burdened by the defendants' conduct, and that defendants' conduct was not reasonably related to some legitimate penological interest.[4] *See Lopez v. Cipolini*, 136 F.Supp.3d 570, 586–87 (S.D.N.Y. 2015). "[A] substantial burden exists where the state 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Monroe v. Gerbing*, No. 16-cv-2818 (KMK), 2017 WL 6614625, at *10 (S.D.N.Y. Dec. 27, 2017) (quoting *Rossi v. Fishcer*, No. 13-cv-3167, 2015 WL 769551, at *7 (S.D.N.Y. Feb. 24, 2015)). "Significantly, the plaintiff's burden in demonstrating substantial burden is not a particularly onerous task." *Rossi*, 2015 WL 769551, at *7 (internal quotation marks omitted); *see also McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004) ("[C]ourts that have adhered to a 'substantial burden' requirement in considering the free exercise claims of prison inmates have suggested that demonstrating such a burden is not a particularly onerous task"). However, even if

---

[4] The Second Circuit has yet to decide whether the substantial burden standard remains viable after the Supreme Court's suggestion in *Emp't Div., v. Smith*, 494 U.S. 872, 887 (1990), that the standard "embroils courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Holland v. Goord*, 758 F.3d 215, 220 (2d Cir. 2014) (quoting *Ford*, 352 F.3d at 592)). Nonetheless, courts in this district have continued to apply the substantial burden test absent any contrary instruction from the Second Circuit, particularly where, as here, the continuing application of the standard has not been challenged by either party. *See, e.g.*, 352 F.3d at 588 (assuming that the substantial burden test applies given plaintiff's failure to argue otherwise and because the parties had not briefed the issue); *Rossi v. Fischer*, No. 13-cv-3167 (PKC) (DF), 2015 WL 769551, at *6 n.8 (S.D.N.Y. Feb. 24, 2015) ("[T]he Second Circuit and judges in this district have continued to require such a threshold showing, particularly in cases where the parties have not argued otherwise."); *Vann v. Fischer*, No. 11-cv-1958 (KPF), 2014 WL 4188077, at *8 n.14 (S.D.N.Y. Aug. 25, 2014) (noting that "[i]t is customary in this District, absent any contrary instruction from the Second Circuit, to assume that the substantial burden test survives").

Plaintiff demonstrates an infringement of his sincere religious beliefs, Defendants' conduct would be "excusable if [it] was supported by legitimate penological interests."[5] *Ford*, 352 F.3d at 595.

Although Plaintiff's task in showing a substantial burden "is not . . . particularly onerous[,]" he has failed to satisfy the requirement here. *Rossi*, 2015 WL 769551, at *7. The Complaint provides no explanation as to what relevant religious beliefs Plaintiff held, nor does it allege that said beliefs were violated by the strip frisks and body cavity searches. Plaintiff merely alleges that he "[was] a practicing Jewish inmate with sincerely held religious beliefs [and] was forced to undergo three (3) uncomfortable strip frisks and body cavity searches before reaching Riverview." (Compl. ¶ 24.) Consequently, Plaintiff's First Amendment free exercise claim is dismissed.

### B. Eighth Amendment Cruel and Unusual Punishment

Plaintiff's claim of cruel and unusual punishment stemming from the strip frisks and body cavity searches he underwent prior to transfer is dismissed. "Prison officials violate the Eighth Amendment only when two requirements are met: (1) the alleged deprivation must, as an objective matter, be 'sufficiently serious,' and (2) the alleged perpetrator must possess a 'sufficiently culpable state of mind.'" *Vaughn v. Strickland*, Nos. 12-civ-2696 (JPO), 12-civ-3335 (JPO), 12-civ-2995 (JPO), 12-civ-3333 (JPO), 2013 WL 3481413, at *3 (S.D.N.Y July 11, 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "For challenges to strip searches in particular, to state an Eighth Amendment violation, courts in this Circuit require that a plaintiff allege that the defendants engaged in egregious conduct." *Holland v. City of N.Y.*, 197 F. Supp. 3d 529, 545 (S.D.N.Y. 2016). "Although such claims are more commonly brought under the Fourth Amendment, the manner in which a strip search is conducted may in certain circumstances give

---

[5] Moreover, the burden remains with the prisoner to show that the penological concerns set forth by Defendants were irrational. *Ford*, 352 F.3d at 595; *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it").

rise to an Eighth Amendment claim." *Show v. Patterson*, 955 F. Supp. 182, 191 (S.D.N.Y. 1997); *see also George v. City of New York*, Nos. 12-cv-6365 (PKC) (JLC), 13-cv-3511 (PKC) (JLC), 13-cv-3514 (PKC) (JLC) 2013 WL 5943206, at *9 (S.D.N.Y. Nov. 6, 2013) (A "body cavity search 'not based on reasonable belief standards [ ] and extremely dehumanizing in its method of conduct' violates the Eighth Amendment") (quoting *Frazier v. Ward*, 426 F. Supp. 1354, 1366 (N.D.N.Y. 1977)).

Reading the Complaint liberally, the only factual support for a claim of cruel and unusual punishment is the allegation that Plaintiff was subjected to "three strip frisks and body cavity searches" before he was transferred to Riverview.[6] (Compl. ¶ 24.) Plaintiff's Complaint, however, lacks any factual information regarding the manner in which the prison's employees conducted the strip frisks and body cavity searches. The only description of the searches Plaintiff offers refers to the number of searches and the fact that they were "uncomfortable." (*Id.*)[7] The number of searches Plaintiff underwent prior to transfer may be indicative of egregious conduct, however, without a more detailed factual account, the claim does not create a "right to relief above the speculative level," and must be dismissed. *Twombly*, 550 U.S. at 555.

### C. Fourteenth Amendment Procedural Due Process

Plaintiff's procedural due process claim also fails to state a claim upon which relief can be granted. To make out a procedural due process claim, Plaintiff must show "(1) that Defendants

---

[6] The Court does not construe the Complaint to allege that Plaintiff's cell confinement constituted cruel and unusual punishment. To state a claim for unconstitutional conditions of confinement in violation of the Eighth Amendment, Plaintiff must allege that: "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind . . . , such as deliberate indifference to inmate health or safety." *Moore v. Cajigas*, No. 12-civ-4120 (WHP), 2013 WL 4734829, at * 4 (S.D.N.Y. Aug. 20, 2013) (internal quotation marks omitted). Plaintiff offers absolutely no facts regarding the conditions of his confinement.

[7] Plaintiff addresses the searches in one sentence which reads: "Plaintiff, a practicing Jewish inmate with sincerely held religious beliefs was forced to undergo three (3) uncomfortable strip frisks and body cavity searches before reaching Riverview." (Compl. ¶ 24.)

deprived him of a cognizable interest in life, liberty, or property, (2) without affording him constitutionally sufficient process." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted). Here, Plaintiff proffers two theories implicating a cognizable interest in liberty and property. First, he contends that his 75-day cell confinement deprived him a protected liberty interest. Second, Plaintiff alleges that his loss of prison employment and college degree program implicated a constitutionally recognized property interest. (*See* Compl. ¶ 25.) The Court considers these arguments in turn.

Defendants argue that 75 days of cell confinement, without more, is insufficient to implicate a liberty interest. (Def. Mot. 8.) The Court agrees. Cell confinement implicates a protected liberty interest when the confinement imposes an "atypical and significant hardship in relation to the ordinary incidents of prison life." *James v. Gage*, No. 15-cv-106 (KMK), 2018 WL 2694436, at * 15 (S.D.N.Y. June. 5, 2018) (quoting *Luna v. Pico*, 356 F.3d 481, 487 n.3 (2d Cir. 2004)); *Barnes v. Starks*, No. 95-civ-4891 (AGS), 1996 WL 648956, at *2 n.3 (S.D.N.Y. Nov. 6, 1996) ("[A] liberty interest will generally only arise where a prisoner is subject to punishment qualitatively different from the punishment characteristically suffered by a person convicted of crime, and had stigmatizing consequences") (citation and internal quotation marks omitted). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)). The Second Circuit has stated that restrictive confinement of less than 101 days does not generally raise a liberty interest warranting due process protection, and thus, requires proof of conditions more onerous than usual. *See Colon*

*v. Howard*, 215 F.3d 227, 231–32, 232 n. 5 (2d Cir. 2000). Confinements of less than 101 days, however, may "constitute atypical and significant hardships if the conditions were more severe than the normal . . . conditions [of confinement] . . . or a more fully developed record showed that even relatively brief confinements under normal . . . conditions were, in fact, atypical." *Palmer*, 364 F.3d at 65.

Here, Plaintiff has not alleged that the conditions he experienced while serving his cell confinement sentence at Woodbourne were atypical or more severe than "normal" conditions.[8] Plaintiff served 68 days out of a 75-day sentence in cell confinement. (Def. Mot. 6.) This amount of time, without more detailed factual allegations of the conditions of confinement, does not implicate a liberty interest under the due process clause. *See*, *e.g.*, *Davis v. Barrett*, 576 F.3d 129, 135 (2d Cir. 2009) ("Even though Davis's confinement was relatively short—lasting at most 55 days—this Court has required a 'detailed factual record,' unless 'the period of time spent in SHU was . . . less than [ ] 30 days . . . and there [is] no indication that the plaintiff endured unusual SHU conditions.'") (quoting *Palmer*, 364 F.3d at 65–66); *Thomas v. DeCastro*, No. 14-cv-6409 (KMK), 2018 WL 1322207, at *7 (S.D.N.Y. Mar. 13, 2018) ("[E]ven if Plaintiff were subjected to 90 days of keeplock, the absence of any allegations regarding the conditions of that confinement means that Plaintiff has 'failed to demonstrate a liberty interest entitling [him] to due process.'") (quoting *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 511 (S.D.N.Y. 2012)). Given the lack of factual allegations concerning Plaintiff's conditions of confinement, and the relatively brief length of Plaintiff's placement in cell confinement, the Court finds that Plaintiff has failed to allege sufficient facts implicating a protected liberty interest. Accordingly, the Court dismisses Plaintiff's due process claim.

---

[8] The Complaint fails to mention any of the conditions Plaintiff experienced while in cell confinement. The only information in the record related to Plaintiff's confinement pertains to the length of the sentence. (*See* Compl. ¶ 19.)

10

Turning to Plaintiff's second theory, the Court rejects the contention that Plaintiff's loss of prison employment and enrollment in the prison's college degree program implicates a cognizable property interest. Property interests are not created by the Constitution, but rather, are created by independent sources of law such as state law. *Airday v. City of New York*, No. 14-cv-8065, 2018 WL 2170295 at *16 (S.D.N.Y. May 10, 2018) ("Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits") (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiff has not offered, and the Court is unaware of, any "statute, rule, contractual agreement or policy" providing for his continued participation in the prison employment program. *Id.* Accordingly, Plaintiff has failed to demonstrate that loss of this position or participation in the prison employment program implicated a property interest. *Id.*

There is, however, a state statute governing correctional education. *See generally* N.Y. Corr. Law § 136 (2013).[9] In interpreting this statute, the Second Circuit has held that § 136 creates "some property interest" but "given the discretionary function of corrections officials which is inescapable in the language of the statute, only the provision of *no education at all* or education that was *wholly unsuited* to the goals of a particular inmates socialization and rehabilitation trigger those protections." *Handberry v. Thompson*, 446 F.3d 335, 353 (2d Cir. 2006). Moreover, "courts . . . have uniformly rejected plaintiffs' arguments that § 136 gives rise to protected property interests." *Id.* at 354; *Lane v. Reid*, 575 F. Supp. 37, 39 (S.D.N.Y. 1983) ("Section 136 does not

---

[9] § 136 states in pertinent part: "The objective of [the correctional education program] shall be the return of . . . inmates to society with a more wholesome attitude toward living . . . [; t]o this end each inmate shall be given a program of education which . . . seems most likely to further the process of socialization and rehabilitation." *Hodge v. Griffin*, No. 13-Civ.-1977 (LTS) (JCF), 2014 WL 2453333, at *2 (S.D.N.Y. June 2, 2014) (quoting N.Y. Corr. Law § 136).

confer a right to both a full-time education and a full-time job. Section 136 provides that each inmate shall be given a program of education"); *see Clarkson v. Coughlin*, 898 F. Supp. 1019, 1041 (S.D.N.Y. 1995) ("while § 136 does not confer upon inmates the right to any specific education, it does refer to education that assists in the inmate's return to society as a wholesome and good citizen") (internal quotation marks omitted). Here, Woodbourne Correctional Facility made the BPI program available to Plaintiff, allowed him to enroll, and did not remove him until after he was found guilty of rule violations. Thus, it cannot be said that Woodbourne provided "no education at all," and since Plaintiff has not alleged that the program was "wholly unsuited to the goals of [Plaintiff's] socialization and rehabilitation," he has failed to demonstrate a cognizable property interest in prison education. *Handberry*, 446 F.3d at 353.

Accordingly, Plaintiff's due process claim fails to state a claim upon which relief can be granted because he does not allege that Defendants deprived him of a cognizable interest in liberty or property. Nonetheless, to the extent that Plaintiff can provide additional allegations suggesting that the conditions of his cell confinement were more severe than "normal" cell confinement conditions, Plaintiff is granted leave to replead his due process claim stemming from his cell confinement. *See Barnes v. United States*, 204 F. App'x. 918, 919 (2d Cir. 2006) (summ. order) (internal quotation marks omitted) (noting that a *pro se* complaint "should not be dismissed without granting leave to replead at least once when [a liberal] reading gives any indication that a valid claim might be stated"). The Court reminds Plaintiff that in the Amended Complaint, he should identify conditions more severe than those typically associated with cell confinement to state a valid due process claim—an ordinary retraction of his privileges will not suffice. *Palmer*, 364 F.3d at 65; *see Thomas*, 2018 WL 1322207, at *6 (noting that a withholding of privileges during keeplock confinement is insufficient to give rise to a protected liberty interest).

## D. Eleventh Amendment

Defendants maintain that Plaintiff's claims for monetary damages against them in their official capacities should be dismissed. (Def. Mot. 13.) The Court agrees. "[T]he Second Circuit has held that '[t]o the extent that a state official is sued for damages in [his] official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state.'" *Davis v. Westchester Cty. Family Court*, No. 16-cv-9487 (KMK), 2017 WL 4311039, at *6 (S.D.N.Y. Sept. 26, 2017) (quoting *Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993)). "'[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity.'" *Tolliver v. Skinner*, No. 12-civ-971 (DAB) (KNF), 2013 WL 658079, at *15 (S.D.N.Y. Feb. 11, 2013) (quoting *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). "This immunity extends to 'arms of the state,' which includes 'officers employed by agencies such as' the DOCCS." *Arriaga v. Gage*, No. 16-cv-1628, 2018 WL 1750320, at *5 (S.D.N.Y. Apr. 6, 2018) (quoting *Dube v. State Univ. of New York*, 900 F.2d 587, 594–95 (2d Cir. 1990)). State officials acting in their official capacities are not considered persons within the meaning of § 1983 and, therefore, cannot be sued for damages. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) ("Because neither a state nor a state official in his official capacity is a "person" within the meaning of § 1983, the requisite discriminatory intent must be held by the state official in his individual capacity.") (internal citation omitted). Therefore, Defendants' motion to dismiss Plaintiff's claims for monetary damages against them in their official capacities is granted.

## E. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity because the Complaint

lacks sufficient factual allegations to show a constitutional deprivation and it does not establish that the defendants had reason to believe an established law was being violated.

"The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 743 (2011)). "[Q]ualified immunity shields . . . officials from suit 'unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct.'" *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Anderson v. Creighton*, 486 U.S. 635, 640 (1987)). "In this way, qualified immunity shields official conduct that is 'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.'" *Id.* (quoting *X–Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999)).

Typically, the defense of qualified immunity will "rest on an evidentiary showing of what the defendant did and why." *Lamzot v. Phillips*, No. 04-civ.-6719 (LAK), 2006 WL 686578, at *8 (S.D.N.Y. Mar. 16, 2006) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 334–35 (2d Cir. 2003)). However, on a 12(b)(6) motion the Defendants "must accept [a] more stringent standard." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004). The "facts supporting the defense [must] appear on the face of the complaint," *id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998)), and the motion must only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)).

Defendant's motion to dismiss Plaintiff's claims on the basis of qualified immunity is denied because there are insufficient factual allegations in the Complaint to support the defense. Under the current facts, it is improper for the Court to determine at this stage whether Defendants violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999) ("we hold that it was improper for the district court to conclude, *at this stage of the litigation*, that it was reasonable for the officers to believe that probable cause existed. Accordingly, dismissing [Plaintiff's] complaint on qualified immunity grounds was inappropriate."); *Constant v. Annucci*, No. 16-cv-3985, 2018 WL 1684411, at *5 (S.D.N.Y. April 5, 2018) ("'In sum, while the Court again recognizes that the qualified immunity issue should be decided at the earliest juncture where possible, the County defendants' motion to dismiss plaintiffs' claims on the basis of qualified immunity is denied, given the [insufficient] allegations in the complaint'") (quoting *Anilao v. Spota*, 774 F. Supp. 2d 457, 493 (E.D.N.Y. 2011)); *Jones v. Avanzato*, No. 14-cv-2044, 2016 WL 183565, at *6 (S.D.N.Y. Jan. 13, 2016) ("[A] defendant asserting [a] qualified immunity defense at [the] motion to dismiss stage 'faces a formidable hurdle . . . and is usually not successful.'") (quoting *Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). In this case, Plaintiff asserts that (1) Defendants "obviously colluded to ensure that plaintiff was deprived of liberty;" (2) that Defendant Chaboty "arbitrarily" approved the misbehavior report; (3) Defendant Marsh exhibited "considerable bias and malicious intent" during the disciplinary hearing; and (4) Defendant Lilley "aid[ed] his subordinates in evading responsibility for their actions." (Compl. ¶¶ 23, 26–8.) However, Plaintiff does not adequately plead that Defendants violated a clearly established constitutional right. Consequently, Defendants' motion to dismiss the claims against them on the basis of qualified immunity is denied at this juncture. Nonetheless, the Court will

allow the Defendants to renew this motion if Plaintiff files an Amended Complaint.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiff's First Amendment free exercise claim, Fourteenth Amendment due process claim, and Eighth Amendment cruel and unusual punishment claims are dismissed, without prejudice, and Plaintiff is granted leave to replead the claims in conformity with this opinion. Defendants' motion to dismiss the claims brought against them in their official capacity is granted. Defendants' motion to dismiss on the basis of qualified immunity is denied. A blank Amended Complaint form is attached.

The clerk of Court is respectfully requested to terminate the motion at ECF No. 17, mail a copy of this Opinion to Plaintiff, and file proof of service on the docket.

Plaintiff is directed to file an Amended Complaint in conformance with the above on or before August 9, 2018. Failure to timely file an Amended Complaint will result in the dismissal of the Fourteenth Amendment due process claim stemming from the punishment imposed at the disciplinary hearing and the First and Eighth Amendment claims stemming from the strip frisks and body cavity searches. The Defendants shall answer or seek a pre-motion conference on any potential motion to dismiss by August 30, 2018.

Dated: July 10, 2018
      White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge